## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

BARBARA MARSHALL                                                    PLAINTIFF

v.                              CASE NO. 2:22-CV-00201 BSM

CITY OF HELENA-WEST HELENA, *et al.*                        DEFENDANTS

### ORDER

Summary judgment [Doc. No. 20] is denied on Barbara Marshall's Arkansas Whistle-Blower Act claim against the City of Helena-West Helena, and her retaliation claims against the City and Bobby Jones. Summary judgment is granted on all remaining claims.

### I. BACKGROUND

Marshall worked for the City's Street and Sanitation Department ("Department") from May 2018 to June 2020, when she was fired. Statement of Undisputed Material Facts ¶¶ 1–2, 58–59, Doc. No. 22 ("SUMF"). Marshall is suing the City and Jones, her former supervisor, for retaliation, violating her constitutional rights, and for state torts. *See* Am. Compl., Doc. No. 14. Defendants are moving for summary judgment.

Jones became the Department's director after January 2019. SUMF ¶ 3. In early 2019, Marshall began reporting misconduct by Department employees to Kevin Smith, the City's then-mayor, via text message and in person. *Id.* ¶¶ 5–7. She reported that Department employees were drinking on the job (including while operating City vehicles), falsifying time cards, paying kickbacks to Jones for fake overtime, embezzling funds from construction projects, using City resources and manpower to repair private citizens' cars, and

not promptly dealing with dangerous road conditions.  Statement of Disputed Facts ¶¶ 11–12,
Doc. No. 28 ("SDF"); Deposition of Barbara Marshall 25:19–26:22, Doc. No. 29-1; SUMF
¶¶ 8–32.  The parties presented conflicting evidence as to (1) whether Marshall reported
these issues to Mayor Smith as part of her job duties or as a concerned citizen, SUMF ¶¶ 4–5;
Resp. SUMF ¶¶ 4–5, Doc. No. 29; SDF ¶¶ 10–11; and (2) when Jones found out that
Marshall was reporting to Mayor Smith.  SUMF ¶ 34; Resp. SUMF ¶ 34; SDF ¶¶ 14–23, 103.

The City presents evidence that Marshall engaged in misconduct while working for
the Department, including: (1) sowing dissension among fellow employees, SUMF ¶ 36; (2)
getting into verbal altercations with her supervisor and a coworker, *id.* ¶¶ 37–38; (3) telling
another employee that he did not have to perform certain duties, *id.* ¶ 40; (4) using a cell
phone while she was supposed to be working, *id.* ¶ 42; and(5) "getting smart" with people
who would call the department.  *Id.* ¶ 43. Marshall counters with testimony from various
coworkers and superiors stating that she was an unobjectionable employee, and by pointing
out that there is no documentation in her file supporting the City's allegations of misconduct.
Resp. SUMF ¶ 36; SDF ¶¶ 5, 28.  The City's specific allegations against Marshall are
deemed admitted because Marshall's responses do not directly contradict them.  *See* Local
Rule 56.1 ("All material facts set forth in the statement [of undisputed material facts] filed
by the moving party . . . shall be deemed admitted unless controverted by the statement filed
by the non-moving party.").  Additionally, Marshall's personnel file contains a letter that
states "Until we can get it resolved that you are a full-time employee, you are to work 6 hours
a day for five days a week."  SUMF Ex. 7, Doc. No. 22-7.  The parties dispute whether this

2

was a written reprimand to Marshall for clocking in early.  Jones Dep. 154:19–155:17;
Marshall Dep. 101:8–11.

On June 24, 2020, Marshall fell on the job and injured her back.  SUMF ¶ 45.  She
was taken by ambulance to the hospital, treated, and released the same day.  *Id.* ¶¶ 49–51.
The treating physician gave her a work release form stating that she could return to work on
June 26, 2020.  *Id.* ¶ 51.  Marshall gave the form to City employee Patricia Lenore on June
24.  *Id.* ¶ 53.  Marshall had a follow-up appointment on June 26 and her physician ordered
medications for her pain.  *Id.* ¶¶ 54–55.  She did not receive certification to take leave under
the Family and Medical Leave Act.  *Id.* ¶ 56.

On June 25, 2020, Jones sent a text message to Mayor Smith stating: "Tell me why
Barbra call John Harris and told that man to come to work this morning. This is the sh*t I'm
tired of with this woman, interfering in the day to day operation.kevin have Mrs Halbert do
that letter today date it for tomorrow I will pick it up today and give it to her tomorrow at 6
am when she come in. See the Attached return to work release I'm about to send u too. This
is too much man. Jay ask us to hire that woman and this job has been f*ck up since she been
here. I have reach my point with her."  SUMF Ex. 17, Doc. No. 22-17.  Harris, another
Department employee, was suspended at the time.  SUMF ¶ 57.  Mayor Smith responded,
"Ok will do."  SUMF Ex. 17.  When Marshall arrived at work on June 26, 2020, a City
employee handed her a termination letter from Mayor Smith informing Marshall that she was
terminated effective immediately.  SUMF ¶ 58.  It stated: "This letter is in reference to your
employment with the Helena-West Helena Street and Sanitation Department. Your services

3

are no longer needed, effective June 26, 2020." SUMF Ex. 18, Doc. No. 22-18.

Marshall called Department employee Bernice Miller on June 28, 2020, and Miller added Jones to the call. SUMF ¶ 63. Marshall made threats of physical violence in reference to Jones, which Jones heard. *Id.* There is a factual dispute as to whether Marshall knew Jones was listening or whether Jones said anything to Marshall on the call. Resp. SUMF ¶ 63; SDF ¶¶ 105–106. Jones reported Marshall's threats to the Phillips County Sheriff Department on June 29, 2020. SUMF ¶ 64. Marshall was charged with two misdemeanors: terroristic threatening and harassment. *Id.* ¶ 65. Marshall was found not guilty of harassment and guilty of terroristic threatening on September 28, 2021. *Id.* ¶ 66. Marshall appealed her guilty verdict to the Phillips County Circuit Court where the case was nolle prossed by the State. *Id.* ¶ 67.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in her pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in a light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility

4

determinations are made.  *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

III.  DISCUSSION

A.     Abandoned Claims

Marshall has abandoned her federal and state constitutional claims except her retaliation claims.  *See* Br. Supp. Resp. Mot. Summ. J. 1; *infra* § III.B.3.  Summary judgment is granted on all abandoned claims.  *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 540 (8th Cir. 2020) (claims are waived when unopposed).

B.     City of Helena-West Helena

*1.  Family and Medical Leave Act*

Summary judgment is granted on Marshall's Family and Medical Leave Act ("FMLA") claim because she did not exercise rights afforded by the FMLA.  To establish a prima facie case of FMLA retaliation, Marshall must "show that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action."  *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).

Employees may take up to twelve weeks of leave under the FMLA due to "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  A "serious health condition" is "an illness, injury, impairment, or physical or mental condition that involves–(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."  29 U.S.C. § 2611(11).  Marshall did not receive "inpatient care" because she

did not stay overnight at the hospital.  *See* 29 C.F.R. § 825.114; SUMF ¶¶ 49–51.  Nor did she receive "continuing treatment."  *See* 29 C.F.R. § 825.115.  This is true because Marshall did not have a "period of incapacity of more than three consecutive, full calendar days"; she was cleared to return to work only two days after her injury.  *Id.* § 825.115(a); SUMF ¶¶ 51, 58.  Nor did Marshall have a "chronic serious health condition" because she has not shown that her back injury "continue[d] over an extended period of time" and incapacitated her either over a continuing period or episodically.  *Id.* § 825.115(c).  None of the other examples of "continuing treatment" in the regulation plausibly apply.  *See generally id.*

### 2.  Arkansas Whistle-Blower Act

Summary judgment is denied on Marshall's Arkansas Whistle-Blower Act ("AWBA") claim against the City because there is a genuine dispute of fact as to whether she was fired because of her protected communications.

To prevail on her AWBA claim, Marshall must establish that she was subjected to an adverse action because she reported a violation of law or waste of public funds, property, or manpower to an appropriate authority.  Ark. Code Ann. §§ 21-1-603; 21-1-604.  The City, as a public employer, has an affirmative defense if the adverse action taken against Marshall was due to her "misconduct [or] poor job performance."  *Entmeier v. City of Fort Smith*, 506 S.W.3d 253, 257 (Ark. Ct. App. 2016) (quoting Ark. Code Ann. § 21-1-604(e)(1)).

Marshall has made out a prima facie case.  First, her termination was an adverse action.  Br. Supp. Mot. Summ. J. 14, Doc. No. 21.  Second, her reports to Mayor Smith that Department employees were drinking on the job, falsifying time cards, receiving kickbacks

6

for fake overtime, embezzling funds from construction projects, and using City resources and manpower to repair private citizens' cars were clearly reports to an appropriate authority of "waste of public funds, property, or manpower." Ark. Code Ann. § 21-1-604(a)(1)(A); SDF ¶ 12; Marshall Dep. 25:19–26:22; *see Bales v. City of Fort Smith*, 505 S.W.3d 705, 712 (Ark. Ct. App. 2016) ("communications regarding improper overtime usage" protected by AWBA). Third, there is evidence supporting her claim that she was terminated because of her protected communications: (1) Jones and some of his employees knew she was the one reporting his employees' misconduct prior to her termination, SDF ¶¶ 14–17, 22; Marshall Dep. 25:12–26:22, 96:1–12; (2) according to Jones's June 29, 2020 memo, he knew at least a month before Marshall was fired that she was telling people that he was doing illegal things on the job and that she had gone to the mayor "and told untruths about me and some of my employees," Pl.'s Ex. G p. 61; *see also* Deposition of Bobby Jones 126:24–127:5, Doc. No. 27-4; (3) Jones threatened to fire employees who talked to the mayor, but felt that his hands were tied with respect to Marshall because she was a whistleblower for the mayor, SDF ¶¶ 18–19; Deposition of Bernice Miller 16:11–19, Doc. No. 27-2; Deposition of Patricia Lenore 75:2–12, Doc. No. 27-5; (4) Jones made the recommendation to fire Marshall, SUMF ¶ 57; SDF ¶ 24; and (5) the reason he gave Mayor Smith was that he was tired of her "interfering in the day to day operation," which plausibly encompasses Marshall's reporting on his department and the ensuing scrutiny he received from the Mayor.  SUMF ¶ 57; SUMF Ex. 17, Doc. No. 22-17; Deposition of Kevin Smith 65:24–66:24, Doc. No. 27-3.  For all of these reasons, a reasonable jury could find a causal connection between Marshall's protected

communications and her termination. *Davison v. City of Minneapolis*, 490 F.3d 648, 658 (8th Cir. 2007) (evidence that a supervisor knew of his employee's protected activities and expressed displeasure with them can satisfy prima facie case of retaliation).

In response, the City has provided what appears to be a legitimate non-retaliatory reason for firing Marshall: her misconduct on the job. The City presents evidence of her misconduct including sowing dissension among fellow employees, SUMF ¶ 36, getting into verbal altercations with her supervisor and a coworker, *id.* ¶¶ 37–38, telling another employee that he did not have to perform certain of his duties, *id.* ¶ 40, using a cell phone while she was supposed to be working, *id.* ¶ 42, and "getting smart" with people who called the Department. *Id.* ¶ 43. The City also points to the letter in Marshall's file which it characterizes as a written reprimand to Marshall for clocking in early. Jones Dep. 154:19–155:17. *But see* Marshall Dep. 101:8–11 (disputing that characterization). The City must prove not only that Marshall engaged in misconduct unrelated to her protected communications, but that it fired her "due to" that misconduct. Ark. Code Ann. § 21-1-604(e)(1). Drawing reasonable inferences in Marshall's favor, she has presented sufficient evidence to create a factual dispute on whether the reason the City now gives for firing her was pretextual.

In addition to the evidence of retaliatory intent in her prima facie case, Marshall has presented evidence that the City deviated from its policies and established practice in firing her (1) without first imposing written reprimands or suspensions and (2) in the absence of documentation supporting its decision. *See Corkrean v. Drake Univ.*, 55 F.4th 623, 632 (8th

Cir. 2022) ("An employer's deviation from its policies can raise a material fact question on the issue of pretext.") (cleaned up). Jones testified that the City typically imposes progressive discipline, moving from oral reprimands to written reprimands, then suspension, and finally termination. Jones Dep. 41:19–43:2. But the record does not show that Marshall was ever reprimanded in writing or suspended for misconduct that interfered with the City's operations; Marshall's personnel file contains only the disputed letter about her hours from nearly a year before her termination. SUMF ¶ 44; SDF ¶ 44; Marshall Personnel File, Doc. No. 27-7. The City's explanation that the documentation existed but that Marshall removed it from her file is not considered at this stage because it would require impermissibly drawing inferences in the City's favor. SUMF ¶ 44. Jones also testified that the normal practice for recommending a termination would be to give the mayor documentation providing a basis for termination, Jones Dep. 18:22–20:8, 80:10–81:19, yet the record contains only a single text message to the mayor regarding her termination. *See* SUMF Ex. 17; Marshall Personnel File.

Marshall has also presented evidence that another Department employee, Clarence Allen, was not fired although he engaged in more serious misconduct than her, including outright insubordination, repeatedly operating city vehicles while drunk, and seriously damaging City infrastructure by his careless driving. SDF ¶¶ 69–71, 77, 87. *See Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1231 (8th Cir. 2013) (evidence that another employee was disciplined more leniently for "more serious" misconduct supported finding of pretext); *see also E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 774–75 (8th Cir. 2003) (a reasonable jury could

find retaliatory motive from an employer's lax enforcement of policies and inconsistent use of disciplinary actions).

Finally, Marshall has presented some evidence that the City's reasons for firing her "shifted over time," which can support an inference of pretext. *Hutton v. Maynard*, 812 F.3d 679, 685 (8th Cir. 2016).  Jones's initial text to Mayor Smith recommended firing Marshall for "interfering in the day to day operation."  SUMF ¶ 57; SUMF Ex. 17.  In a later response to an interrogatory, the only reason the City provided for firing Marshall is her at-will employee status.  Jones Dep. 15:5–16:10.  Then in his deposition, Jones added that she was fired because she created problems on the job, got into it with other employees, and tampered with another employee's timecard.  *Id.*  By contrast, Mayor Smith said that Jones recommended firing Marshall for "job abandonment" because she did not immediately return to work after her injury.  SDF ¶ 28; Smith Dep. 36:8–22.

### 3.  *Retaliation (Arkansas Civil Rights Act/42 U.S.C. § 1983)*

Summary judgment is denied on Marshall's retaliation claims under the federal and Arkansas constitutions pursuant to the Arkansas Civil Rights Act ("ACRA") and 42 U.S.C. section 1983, respectively, because there is a genuine dispute as to whether she was fired because of her constitutionally protected speech.  These claims are subject to the same analysis.  *See Hill v. City of Pine Bluff*, 696 F.3d 709, 716 (8th Cir. 2012) (ACRA retaliation claims "analyzed under the same substantive standards" as Title VII retaliation claims); *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011) (First Amendment retaliation claims "analyzed under the same framework" as Title VII retaliation claims).

Marshall has not presented direct evidence that she was fired for reporting to Mayor Smith, so she must establish a prima facie case of retaliation to avoid summary judgment. *See Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011) (defining "direct evidence" as "demonstrat[ing] a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse action was in retaliation for the protected conduct"). To do so, she must prove that: (1) she engaged in speech protected by the First Amendment; (2) the City took an adverse employment action against her; and (3) her protected speech was the but-for cause of the City's decision to take the adverse employment action. *See Davison*, 490 F.3d at 655; *Laney v. City of St. Louis*, 56 F.4th 1153, 1157 n.2 (8th Cir. 2023) (holding that "but-for causation" rather than "a substantial factor" must now be shown). The City concedes that firing Marshall was an adverse employment action. Br. Supp. Mot. Summ. J. 14.

Although Marshall was a public employee, her reporting to Mayor Smith was speech protected by the First Amendment because she did so as a citizen on a matter of public concern rather than primarily to further her own private interests. *See Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015). Marshall's reports to Mayor Smith were on matters of public concern because they were about waste and fraud involving City funds, property, and manpower by Department employees. *See Domina v. Van Pelt*, 235 F.3d 1091, 1097 (8th Cir. 2000) (reporting that a supervisor raised the salary of an employee he was having an affair with and paid her for time she was not working was speech on matter of public concern because it involved "the use of public funds"); *Kincade*

*v. City of Blue Springs*, 64 F.3d 389, 396 (8th Cir. 1995) (report that municipality paid "local developers a substantial amount of money for work on the dam that had not been done" was speech on matter of public concern).

It is true that "a public employee does not speak as a citizen if [s]he speaks pursuant to h[er] job duties," even if the subject is a matter of public concern. *Lindsey v. City of Orrick*, 491 F.3d 892, 898 (8th Cir. 2007) (citing *McGee v. Pub. Water Supply, Dist. #2*, 471 F.3d 918, 919 (8th Cir. 2006)). And Marshall has testified that after hiring her, Mayor Smith instructed her to be his "eyes and ears" in the Department and report to him what went on there. SUMF ¶ 4. But Mayor Smith denied having told Marshall to do so and stated that she reported concerns to him under his open-door policy. Smith Dep. 64:24–66:5; *see also* Marshall Dep. 95:6–18 (stating that she reported to Mayor Smith as a "concerned citizen"). This evidence raises a genuine dispute of fact on whether Marshall reported to Mayor Smith as part of her job duties.

Marshall has presented sufficient evidence for a reasonable jury to conclude that her reporting to Mayor Smith was the but-for cause of the City's decision to fire her, for the reasons in the previous section. She has thus established a prima facie case of retaliation, and the burden shifts to the City to demonstrate that it would have fired Marshall in the absence of her protected activity. *See Davison*, 490 F.3d at 655. Here again, the City may point to evidence of Marshall's misconduct on the job as reason to fire her independent of her reporting to the mayor. But for the reasons in the previous section, Marshall has raised a factual dispute as to whether the City would have fired her regardless of her protected

activity.

### 4.  Tort Claims

Summary judgment is granted on Marshall's malicious prosecution, abuse of process, and defamation claims.

Marshall's malicious prosecution claim is dismissed because the City is immune from that claim.  *Culpepper v. Biggers*, 742 F. Supp. 528, 534 (E.D. Ark. 1990) (citing *Autry* v. *Lawrence*, 696 S.W.2d 315, 315–16 (Ark. 1985)).

Her abuse of process claim is dismissed because there is no evidence of extortion or coercion relating to the criminal charges against Marshall.  *See Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 385 S.W.3d 754, 761–62 (Ark. 2011) (plaintiff must show that "a judicial process [was] used to extort or coerce . . . after its issuance").  Regardless of the role Jones played in starting the criminal investigation, Marshall has presented no evidence that the City or Jones used the pending charges to extort or coerce her.

Finally, summary judgment is granted on Marshall's defamation claim because she has presented no evidence that Jones's statement to the police was false or that she suffered damages.  To establish her claim for defamation, Marshall must prove: (1) that Jones made a defamatory statement of fact; (2) it identified or referenced Marshall; (3) Jones published the statement; (4) he did so with fault; (5) it was false; and (6) she suffered damages.  *Patrick v. Tyson Foods, Inc.*, 489 S.W.3d 683, 694 (Ark. Ct. App. 2016).

Jones's statement to the police that Marshall threatened to beat him up clearly identified Marshall, was of a defamatory nature, and constitutes publication.  *See Wal-Mart*

*Stores, Inc. v. Lee*, 74 S.W.3d 634, 651 (Ark. 2002) (statements to detective that employee had committed theft supported defamation verdict).  Marshall has not, however, raised a genuine dispute of fact as to whether Jones heard her make the threats he reported to the police.  The City has presented evidence that a three-way call took place among Miller, Marshall, and Jones and that Marshall threatened to harm Jones on that call.  SUMF ¶ 63.  In response, Marshall states that she did not know Jones was on the call and that Jones instigated the argument.  Resp. SUMF ¶ 63.  At best, Marshall can show that she did not knowingly make threats *to* Jones, which does not contradict the City's evidence that Jones heard her make threats *about* him.  SDF ¶¶ 105–106.  Moreover, Marshall has offered no evidence of "actual damage to [her] reputation" or "a causal connection" between Jones's statements and such damage, as necessary to establish the damages element.  *Boellner v. Clinical Study Ctrs., LLC*, 378 S.W.3d 745, 757 (Ark. 2011); *see Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 403 (Ark. 2002) (Arkansas law no longer presumes damage to reputation from defamation).

C.     Bobby Jones

Marshall is suing Jones in his official and individual capacities.  Her claims against Jones in his official capacity are claims against the City and have been addressed in the preceding section.  *See Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent.") (citation omitted).  Summary judgment is denied on Marshall's retaliation claim against Jones in his individual capacity for the reasons provided in section

14

III.B.3.

Summary judgment is granted on Marshall's remaining individual-capacity claims against Jones for the following reasons: (1) as to her FMLA claim, for the reasons in section III.B.1; (2) as to her AWBA claim, because that statute does not permit suits against individuals, *Steinbuch v. Univ. of Ark.*, 589 S.W.3d 350, 359 (Ark. 2019); (3) as to her abuse of process and defamation claims, for the reasons in section III.B.4; and (4) as to her malicious prosecution claim, because Jones heard Marshall make the threats he reported to the police and she therefore cannot demonstrate an absence of probable cause for her prosecution. *See* Ark. Code Ann. §§ 5-71-208(a); 5-13-301(b)(1); *see also Brown v. City of St. Louis*, 40 F.4th 895, 903 (8th Cir. 2022) (official entitled to qualified immunity for initiating prosecution supported by "arguable probable cause").

## IV.  CONCLUSION

For these reasons, defendants' motion for summary judgment is denied on Marshall's AWBA claim against the City and her retaliation claims against the City and Bobby Jones. Summary judgment is granted on all remaining claims.

IT IS SO ORDERED this 1st day of July, 2024.

UNITED STATES DISTRICT JUDGE